UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VERONICA HILYARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:13-CV-2059 (CEJ) |
| ) | |
| MEDTRONIC, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion to remand this action to the Circuit Court of the City of St. Louis, from which it was removed. Defendants oppose the motion, and the issues are fully briefed.

I.   Background

Defendants Medtronic, Inc. and Medtronic Sofamor Danek USA, Inc. (collectively "Medtronic"), design, manufacture, and sell various types of medical devices, including the InFUSE™ Bone Graft and LT-CAGE™ Lumbar Tapered Fusion Device (Infuse).[1] Infuse is a Class III medical device approved by the Food and Drug Administration (FDA) through the required pre-market approval process. It has been approved for use during single-level lumbar spinal fusion surgeries, when implanted via an anterior approach.

On February 27, 2008, plaintiff underwent an L4-L5 transforaminal lumbar interbody fusion at defendant Barnes-Jewish Hospital (BJH), in which defendant Timothy Kuklo, M.D. implanted Infuse in an "off-label" manner, *i.e.*, a manner not approved by the FDA. Plaintiff alleges that after the surgery she experienced severe and chronic pain. Plaintiff attributes her injuries to the defendants' improper marketing

---

[1] Defendant Doe 1 is a sales representative and consultant employed by Medtronic .

and promotion of Infuse for off-label uses and fraudulent misrepresentations about the safety of Infuse.

Plaintiff's complaint asserts the following state law causes of action: (1) fraudulent misrepresentation; (2) strict liability - failure to warn; (3) strict liability - design defect; (4) negligence; (5) breach of implied warranty; (6) breach of express warranty; (7) violation of the Missouri Merchandising Practices Act; and (8) negligent misrepresentation.

Defendants removed this action to federal court on the bases of diversity of citizenship and federal-question jurisdiction. Plaintiff filed the instant motion to remand arguing that this Court lacks subject-matter jurisdiction.

## II. Legal Standard

An action is removable to federal court if the claims could have originally been filed in federal court. 28 U.S.C. § 1441; <u>In re Prempro Products Liability Litigation</u>, 591 F.3d 613, 619 (8th Cir. 2010). The defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence. <u>Altimore v. Mount Mercy College</u>, 420 F.3d 763, 768 (8th Cir. 2005). All doubts about federal jurisdiction must be resolved in favor of remand. <u>In re Bus. Men's Assurance Co. of Am.</u>, 992 F.2d 181, 183 (8th Cir. 1993). In the event that the federal court determines that it lacks subject-matter jurisdiction over a removed action, it must remand the action to the state court where it originated. 28 U.S.C. § 1447(c).

## III. Discussion

Defendants contend that this Court has subject-matter jurisdiction over plaintiff's claims under both 28 U.S.C. § 1331 and § 1332. They argue that diversity jurisdiction exists because Washington University and BJH were fraudulently joined.

Defendants argue that federal-question jurisdiction also exists because plaintiff's claims present substantial federal issues. The Court will address these arguments in turn.

1. Diversity Jurisdiction

Diversity jurisdiction requires an amount in controversy greater than $75,000, exclusive of interest and costs, and complete diversity of citizenship among the litigants.[2] 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007). However, "[c]ourts have long recognized fraudulent joinder as an exception to the complete diversity rule." In re Prempro, 591 F.3d at 620; Witherspoon v. Bayer Healthcare Pharmaceuticals Inc., 2013 WL 6069009, *2 (E.D. Mo. Nov. 18, 2013).

"Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." Id. Fraudulent joinder requires a showing that the claim involving the nondiverse party has "no reasonable basis in fact and law." Knudson v. Systs. Painters, Inc., 634 F.3d 968, 980 (8th Cir. 2011). Thus, it must be "clear under governing state law that the complaint does not state a cause of action against the non-diverse defendant" and there is no "arguably [] reasonable basis for predicting that the state law might impose liability based upon the facts involved." Witherspoon, 2013 WL 6069009, at *2. When a district court reviews a fraudulent joinder claim, "the court has no responsibility to definitively settle the ambiguous question of state law." Filla v. Norfork Southern Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003).

---

[2] The parties agree that the amount in controversy requirement is met in this case.

In the instant case, plaintiff, Washington University, and BJH are citizens of Missouri. Medtronic is a citizen of Minnesota and Tennessee and Dr. Kuklo is a citizen of Colorado. In the notice of removal, defendants contend that Washington University and BJH are fraudulently joined. Defendants support this contention by arguing that: (1) plaintiff's complaint does not plead any factual allegations against Washington University or BJH to support a claim against them; and (2) plaintiff's claims against Washington University and BJH are barred by Missouri's two-year statute of limitations for medical malpractice actions.

In support of her motion to remand, plaintiff argues that she has alleged a colorable claim against Washington University under Missouri law pursuant to the doctrine of respondeat superior. Plaintiff argues that Dr. Kuklo, an employee and agent of Washington University, was acting within the course and scope of his agency when he concealed material facts about Infuse and when he improperly used Infuse in an off-label manner. Plaintiff argues that these actions were done while Dr. Kuklo was engaged in the practice of medicine at Washington University and, thus, he was acting in furtherance of the university's business of providing medical care to patients.

"Under the doctrine of respondeat superior, an employer is held responsible for the misconduct of an employee where that employee is acting within the course and scope of his employment." <u>Tuttle v. Muenks</u>, 964 S.W.2d 514, 517 (Mo. App. 1998). "The course and scope of employment is defined as acts (1) which, even though not specifically authorized, are done to further the business or interests of the employer under his general authority and direction and (2) which naturally arise from the performance of the employer's work." <u>Daugherty v. Allee's Sports Bar & Grill</u>, 260 S.W.3d 869, 872-73 (Mo. App. 2008) (citation omitted).

Upon consideration of these factors, the Court is satisfied that "there is an arguably reasonable basis for predicting that the state law might impose liability" against Washington University in this case. See <u>Witherspoon v. Bayer Healthcare Pharmaceuticals Inc.</u>, 2013 WL 6069009, at *2. Although Washington University may not have known about or authorized Dr. Kuklo's promotion and implantation of Infuse, Dr. Kuklo was acting as a surgeon employed by Washington University when the alleged fraud was committed. Thus, it would not be unreasonable to assume that a Missouri state court could find that Dr. Kuklo's actions were in furtherance of the interests of his employer and which naturally arose from Dr. Kuklo's occupation as a surgeon. However, "the clear precedent in this District is that this determination is a question better left for review by the state court." <u>Bock v. Liberty Restaurant Group</u>, 4:13-CV-781-AGF (E.D. Mo. Aug. 23, 2013).

In their notice of removal, defendants additionally assert that Washington University is fraudulently joined because all claims against it are barred by Missouri's two-year statute of limitations for medical malpractice. In support of her motion to remand, plaintiff argues that a five-year statute of limitations applies because her complaint asserts a claim of fraud, not medical malpractice.

Missouri's statute of limitations for medical malpractice actions provides, in pertinent part, that "[a]ll actions against physicians, hospitals . . . and any other entity providing health care services . . . for damages for malpractice, negligence, error or mistake related to healthcare shall be brought within two years from the date of occurrence of the act of neglect complained of[.]" Mo. Rev. Stat. § 516.105. In contrast, fraud actions are governed by a five-year statute of limitations, which begins to run when the fraud was discoverable by the aggrieved party. Mo. Rev. Stat. §

516.120(4). "A plaintiff may not circumvent the two-year statute of limitations by characterizing what is actually a medical malpractice claim as a different type of claim." Cleveland v. Hand Therapy of Chesterfield, 2008 U.S. Dist. Lexis. 49774, *6 (E.D. Mo. June 27, 2008). Missouri courts look at the "gravamen or gist of the action" in order to determine whether the suit is more appropriately categorized as a medical malpractice action subject to a two-year limitations period or a fraud action subject to a five-year limitations period. Id. at *7 (citing Barnhoff v. Aldridge, 38 S.W.2d 1029, 1030 (1931)).

After careful examination of the instant complaint, the Court finds that the "gravamen or gist" of this action could reasonably be construed as fraud and, thus, subject to a five year statute of limitations under Missouri state law. Plaintiff's complaint alleges that Dr. Kuklo, while employed as a surgeon at Washington University, was also a paid consultant or "opinion leader" for Medtronic, in which he received more than $800,000 over an eight-year period. See Doc. #6, ¶ 183. Plaintiff alleges that during his tenure as an opinion leader, Dr. Kuklo falsified data in a published study and misrepresented the seriousness of the adverse effects of Infuse. Id. at ¶ 185-190. Plaintiff further alleges that Dr. Kuklo intentionally failed to inform plaintiff that Infuse would be used in her spine in an experimental manner and did not inform her of any risks specific to this off-label use. Id. at ¶ 254-256. Plaintiff alleges that she relied on Dr. Kuklo's intentional concealment of information and misrepresentations when she consented to the surgery. Id. at ¶ 263-273. Nowhere in the complaint does plaintiff specifically allege a claim of medical malpractice.

Based on these allegations, it would be reasonable to predict that a state court would find that the gravamen of this action is fraud, not malpractice. According to

plaintiff, Dr. Kuklo, as an agent of Washington University, executed a scheme that convinced patients, such as plaintiff, to undergo a dangerous surgery for his own financial benefit. Dr. Kuklo's alleged concealment of material facts was relied upon by plaintiff and this concealment prevented her from making an informed decision regarding her medical care, which later caused her injuries. See State *ex. rel. Sperandio v. Clymer*, 273 S.W.3d 1, (Mo. App. Feb. 6, 1978) (court found that the action was based in fraud, not malpractice, when doctor concealed medical information from plaintiff).

As previously discussed, fraudulent joinder requires a showing that the claim involving the nondiverse party has "no reasonable basis in fact and law." Knudson, 634 F.3d at 980. Because plaintiff's complaint can arguably be classified as a fraud action, this Court cannot find that Washington University was fraudulently joined. See Filla, 336 F.3d at 810 (when reviewing a fraudulent joinder claim, a district "court has no responsibility to definitively settle the ambiguous question of state law.").

Accordingly, the Court finds that plaintiff has asserted a colorable claim against Washington University. Thus, the citizenship of Washington University will not be disregarded for the purposes of diversity jurisdiction.[3]

### 2. Federal-Question Jurisdiction

Defendants next argue that this Court may exercise subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because plaintiff's claims present a substantial federal question. Although federal-question jurisdiction is generally invoked when a plaintiff pleads a federal cause of action, on rare occasions "federal-question jurisdiction will

---

[3] In light of this determination, it is unnecessary to analyze defendants' fraudulent joinder argument as to BJH.

lie over state-law claims that implicate federal issues." Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg., 545 U.S. 308, 312 (2005) (citation omitted). In order to be removable, those state-law claims must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314; see also Gunn v. Minton, 133 S.Ct. 1059, 1065 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."). Therefore, the Court may exercise jurisdiction over plaintiff's state-law claims if they necessarily raise a disputed and substantial federal issue, and if such an exercise of jurisdiction would not disturb "Congress's intended division of labor between state and federal courts." Grable, 545 U.S. at 319.

Defendants argue that plaintiff's state-law claims raise substantial federal issues, because, to avoid preemption of those claims, plaintiff must allege specific violations of federal requirements. The Medical Device Amendments (MDA) to the Federal Food, Drug and Cosmetic Act (FDCA) contain an express preemption provision, preventing states from imposing requirements on medical devices "different from, or in addition to" those imposed by federal law. 21 U.S.C. § 360k(a). However, the MDA "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." Riegel v. Medtronic, Inc., 552 U.S. 312, 330 (2008) (citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 495 (1996)). "To properly allege parallel claims, the complaint must set forth facts pointing to specific [federal] requirements that have

been violated." Wolicki-Gables v. Arrow Int'l, Inc., 634 F.3d 1296, 1301 (11th Cir. 2011) (internal quotations and citation omitted).

Plaintiff argues that this Court is without jurisdiction, because the only federal issue in this case has been raised, not by plaintiff, but by defendants' federal preemption defense. The Court agrees. Under the longstanding and firmly established rule of the "well-pleaded complaint," "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)). A federal court may not exercise jurisdiction on the basis of a federal defense, including one of preemption, even if that defense is foreseen by plaintiff and addressed in the complaint. Id. at 393 (citation omitted) ("[I]t is… settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").[4] In the instant case, plaintiff claims that defendants violated state law. Plaintiff alleges parallel violations of federal law in the complaint in order to avoid preemption. This is not enough to support jurisdiction under 28 U.S.C. § 1331.

This conclusion is supported by the Supreme Court's holding in Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804 (1986), that "a state tort claim incorporating allegations that the FDCA has been violated does not arise under federal law for purposes of section 1331." Goade v. Medtronic, Inc., No. 13-5123-CV-SW-ODS, 2013 WL 6237853, at *4 (W.D. Mo. Dec. 3, 2013) (explaining that Merrell Dow's specific

---

[4] Complete preemption is an exception to this rule, but does not apply in this case.

holding with regard to state claims incorporating the FDCA remains good law). It also aligns with several recent decisions issued by district courts, rejecting Medtronic's arguments in support of federal-question jurisdiction over plaintiffs' state-law claims arising from the development and marketing of Infuse. See, id. at *5 (remanding for lack of substantial federal issues); David v. Medtronic, Inc., No. 2:13-cv-4441-DMG-CW, [Doc. #47] (C.D. Cal. Aug. 6, 2013) (not reported) (remanding, and holding that "[t]he fact that Plaintiffs may need to establish a parallel federal requirement to avoid preemption of some or all of their claims is part of Defendants' preemption defense - it does not, as Defendants argue, transform the state law claims into federal questions."); but see Jenkins v. Medtronic, Inc., No. 2:13-cv-2004-JTF, 2013 WL 6172234, at *1 (W.D. Tenn. Nov. 21, 2013) (denying motion to remand, and finding that plaintiffs' state-law claims raised a substantial federal issue).

Finally, the Court notes that even if plaintiff's claims did necessarily raise a substantial federal issue, it is likely that an exercise of federal jurisdiction in this case would upset Congress's intended structural balance between state and federal courts. Congress specifically declined to create a federal cause of action under the FDCA. Congress also declined to preempt all state remedies or divest state courts of jurisdiction. The combination of no federal cause of action and no preemption of all state remedies, while not dispositive, is "an important clue to Congress's conception of the scope of jurisdiction to be exercised under 1331." Grable, 545 U.S. at 318 (discussing Merrell Dow, 478 U.S. 804 (1986)).

* * *

For the reasons discussed above, the Court concludes that defendants have failed to establish subject-matter jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand [Doc. #37] is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall remand this action to the Twenty-Second Judicial Circuit Court of Missouri (City of St. Louis) from which it was removed.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2014.